# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2014

## STATE OF TENNESSEE v. TAN VO

**Appeal from the Criminal Court for Shelby County**
**No. 1107054      Honorable Paula L. Skahan, Judge**

---

**No. W2013-02118-CCA-R3-CD  - Filed September 9, 2014**

---

The Defendant, Tan Vo, was convicted by a Shelby County Criminal Court jury of sexual battery and incest.  The trial court imposed concurrent sentences of two years and six years for the sexual battery and incest convictions, respectively, to be served in the county workhouse.  The sole issue presented for our review is whether the trial court abused its discretion in denying the Defendant's request for probation and imposing an effective sentence of six years to be served in the county workhouse.  Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined.  JEFFREY S. BIVINS, J., Not Participating.

Marvin Ballin and Richard S. Townley, Memphis, Tennessee, for the Defendant-Appellant, Tan Vo.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General, Amy P. Weirich, District Attorney General; and Eric Christensen and Eugene C. Ostner, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

On November 8, 2011, the Shelby County Grand Jury indicted the Defendant with two counts of rape and one count of incest for an incident involving his nineteen year-old daughter.  The case was tried by jury on July 10-12, 2013, at which the following proof was presented.

**Trial.** In the last week in June 2011, the victim, C.K.[1], moved out of her adoptive parents' home in Nashville and came to Memphis to live with and get to know her biological father, the Defendant. She was nineteen years old at the time. The victim stayed with her paternal grandmother when she first arrived in Memphis because the Defendant, who was married and had another daughter, did not have sufficient room in his house. However, the victim spent each evening with the Defendant and his family before returning to her grandmother's home to sleep.

On July 2, 2011, after being in Memphis for less than a week, the victim went to dinner with her uncle and then went to the Defendant's home around 10:30 or 11:00 p.m. When she arrived, the Defendant and several friends were sitting around drinking and listening to music. The Defendant's wife and other daughter were not at the house that evening. The victim joined the Defendant and his friends in drinking and consumed four or five beers. The Defendant's friends left around 12:00 a.m., and the Defendant's brother and roommate went to bed soon after. The Defendant told the victim that she could sleep in his room with him rather than on the couch. The victim did not "think anything of" the Defendant's offer because she knew that the Defendant's other daughter regularly slept in the bed with the Defendant and his wife.

The victim entered the Defendant's bedroom, climbed into bed, and laid down on her side. The Defendant followed the victim into his bedroom and locked the bedroom door before getting in bed. Once in bed, the Defendant gave the victim what she described as a "fatherly hug." He then started to rub her back and kiss her neck. She felt "awkward" and did not know what to do. The Defendant turned the victim over on her back, removed her shorts, and started performing oral sex on her. After a few minutes, the Defendant got out of bed and removed the rest of his clothing. He got back in bed and penetrated the victim vaginally with his penis. The Defendant attempted to kiss the victim on the mouth, but she would move her head to avoid the kiss. The victim testified that she did not move or speak during the incident. At one point, the Defendant asked, "Is this okay," and the victim did not respond because she was scared. She testified that she had "tears rolling down [her] face." She noted that the Defendant was not wearing a condom.

After the incident, the victim told the Defendant she needed to use the bathroom. She put on her clothes and went into the bathroom where she called her adoptive mother and told her the Defendant had raped her. While she was on the phone, the Defendant knocked on the bathroom door and asked her if she was okay. The victim hung up the phone and told the Defendant that she was fine. Her adoptive mother and father called 911 in Memphis to report the incident. When the victim exited the bathroom, the Defendant asked her if she

---

[1] To protect the anonymity of the victim, we utilize her initials.

wanted to smoke a cigarette in the den. She agreed "because [she] didn't want to go back in the bedroom." After the Defendant finished his cigarette, he went back to bed and the victim called her boyfriend. She then exited to house to find the Memphis Police arriving on the scene.

The victim spoke with officers on the scene and then was transported to the Rape Crisis Center where a "rape kit" was performed on her. The Defendant was arrested and transported to the sex crimes division of the Memphis Police Department where swabs were taken from his mouth and genitals. As the Defendant was being transported to the jail for processing, he told Sergeant Melvin Amerson, "[s]he's my daughter. When I got on her, she did not tell me to stop. So I had sex with her. I asked her was it wrong."

The victim's "rape kit" and the swabs taken from the Defendant were transported to the Tennessee Bureau of Investigation ("TBI") crime lab for testing. Special Agent Lawrence James, a forensic scientist with the TBI, testified as an expert in forensic DNA analysis. He testified that semen was found in the victim's underwear, and the semen found matched the Defendant's DNA profile. Following deliberations, the jury convicted the Defendant of sexual battery as a lesser-included offense of rape and incest as charged in the indictment.[2]

**Sentencing Hearing.** At the August 23, 2013 sentencing hearing, the Defendant's ex-wife, Lilly Nguyn, testified that the Defendant was "very sorry" about the incident and "ashamed of himself." She testified that he was a good husband who took care of his family, and although she divorced the Defendant for other reasons, she "still support[ed] him." The Defendant offered the following allocution:

> I am so sorry for what I had done. I am so sorry to [the victim] and her family and everybody in here. I know I was wrong. I shouldn't of [sic] done it. I was so drunk and not myself. That is not my person. I cannot sleep at night and I feel bad for what, for what I've done.
>
> I wish I c[ould] take what I had done, that was the mistake I had never done again. I'm much [sic] sorry for [the] mistake, please forgive me. Just one time, please forgive me . . . . Please, please . . . . I'm sorry.

_____

[2] At the conclusion of the State's proof, the trial court granted the defendant's motion for judgment of acquittal as to one count of rape.

The State introduced the Defendant's presentence report and the Defendant's psychosexual evaluation report. The State also read into evidence an impact statement from the victim:

> All I ever wanted was a relationship with my birth father. Instead I'm left with betrayal of the most grievous kind. This crime is the first thing I think about in the morning and the last thing I think of at night. I've lost myself, my self-esteem, my whole sense of who I am and where I fit in the world. I tried to numb the pain with drugs and had to go through rehab. This has been extremely hard on me and my family. I won't ever be the same again.

> I'm currently being treated for depression and anxiety and insomnia. I see a sexual assault therapist, a drug counselor[,] and a psychiatrist. I've lost over four months of work and [in]curred out-of-pocket expenses for rehab and medical treatment in excess of seven thousand, eight hundred dollars.

> . . . . I'm not seeking anything from the [D]efendant except justice. I did nothing wrong, yet I have to live with this awful crime for the rest of my life. How much is the rest of my life worth? I guess it depends on what is fair. I feel serious prison time is demanded in this case. There are serious consequences involved. For this offender to receive probation it would victimize me all over again.

At the conclusion of the hearing, the trial court concluded that probation was inappropriate in this case and sentenced the Defendant as a Range I, standard offender to a maximum sentence of six years at 30% for the incest conviction and two years for the sexual battery conviction, to be served concurrently at the county workhouse. On September 10, 2013, the Defendant filed a motion for a new trial, which was denied by the trial court after a hearing. The Defendant then filed a timely notice of appeal to this court on September 13, 2013.

## ANALYSIS

The sole issue presented for our review on appeal is whether the trial court abused its discretion in denying the Defendant's request for probation and imposing an effective sentence of six years to be served in the county workhouse. The Defendant argues that the trial court relied on matters outside of the evidentiary record and imposed a sentence that is not in compliance with the purposes and principles of sentencing. The State responds that the trial court properly denied probation and imposed a maximum sentence of incarceration. Upon review, we agree with the State.

-4-

Because of the broad discretion given to trial courts by the 2005 amendments to the Sentencing Act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In addition, this standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b)(1)-(7) (2014). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (2010), Sentencing Comm'n Cmts. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102, -103 (2014). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2014). A trial court should consider the following when determining

whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2014); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996) (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5).

In the present case, the trial court reviewed the presentence report, the Defendant's psychosexual evaluation, and the testimony presented at the sentencing hearing before imposing the Defendant's sentence. The court considered the appropriate enhancement factors and found that the Defendant violated a position of private trust and had a history of criminal convictions beyond that necessary to establish the appropriate range. See T.C.A. § 40-35-210(b)(5); -114(1), (14). As a mitigating factor, the court considered, yet gave little weight to, the fact that the Defendant's conduct neither caused nor threatened serious bodily injury to the victim. See id. § 40-35-210(b)(5); -113(1). The court acknowledged that the Defendant expressed remorse for his actions; however, the court emphasized that "this [crime] is one of the most repulsive things this Court has ever seen," and added that the victim is "scarred from it and she will be scarred from it for life." Accordingly, the court concluded that maximum sentences of six years for incest, a Class C felony, and two years for sexual battery, a Class E felony, were warranted. Additionally, the court concluded that probation was inappropriate given the nature and circumstances of the case and reasoned that confinement was necessary to "avoid depreciating the seriousness of the offense." See T.C.A. § 40-35-103(1)(B). The court acknowledged that the psychosexual evaluation found the Defendant to be at a low-risk to re-offend but stated "I don't see the potential for rehabilitation in this area and I do think that the message needs to go to [the Defendant] that this [behavior] is absolutely not to be tolerated in a civilized society . . . ."

**I. Length of the Sentence.** The Defendant first challenges the length of the sentence imposed by the trial court. The Defendant acknowledges that the trial court properly considered the enhancement and mitigating factors and the circumstances of the offense but argues that the court also impermissibly considered matters outside of the evidentiary record. Specifically, the Defendant takes issue with the following commentary by the court:

> I spoke with the jurors after they deliberated and rendered their verdict. They were absolutely appalled at the conduct that they saw in this courtroom. But they just didn't feel like the State had made out a case for rape beyond a reasonable doubt. But you were very close to being convicted for rape. Several of them wanted you to be convicted for rape but . . . it was not unanimous. So you're very fortunate you're not looking at one hundred percent sentencing at a much higher sentence term.

> But six years I think is appropriate for something that is absolutely shocking to I think any decent citizen in our community. . . .

As correctly noted by the Defendant, a trial court must only consider "evidence in the record of the trial, the sentencing hearing, the presentence report and the record of prior felony convictions filed by the district attorney general with the court . . . ." See T.C.A. § 40-

35-210(f). "Implicit within this subsection is that the judge may not consider matters other than those factors presented in open court." Id., Sentencing Comm'n Cmts. See also, State v. Hooper, 29 S.W.3d 1, 13 (Tenn. 2000) (noting that the trial court should not consider matters outside of the record when reaching a sentencing decision). However, contrary to the Defendant's assertions, the trial court's comments were not the basis of its sentencing decision. The court's comments were made after the court had concluded that maximum sentences of six years for incest and two years for sexual battery were appropriate based upon the proof presented at trial and the sentencing hearing. Considered in context, we agree with the State that the court's comments were "nothing more than a commentary on the [D]efendant's fortune" that he was convicted of sexual battery rather than rape, which carries a greater sentence. The record confirms that the trial court properly considered the evidence presented at trial and in the sentencing hearing as well as the purposes and principles of the Sentencing Act prior to imposing the Defendant's sentence. Accordingly, we discern no abuse of discretion by the trial court.

**II. Denial of Probation.** The Defendant also challenges the trial court's denial of probation. The Defendant argues that the trial court failed to give proper weight to the psychosexual evaluation, which placed the Defendant at a low-risk to re-offend, and imposed a sentence that does not comply with the purposes and principles of the Sentencing Act.

We begin our analysis by noting that the Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." See T.C.A. § 40-35-303(a). Additionally, because the Defendant is a standard offender convicted of Class C and E felonies, he is considered a favorable candidate for alternative sentencing absent evidence to the contrary. See id. -102(6). We note, however, that "[f]ollowing the June 7, 2005 amendments to our Sentencing Act, no longer is any defendant entitled to a presumption that he or she is a favorable candidate for alternative sentencing." State v. Randall Cunningham, No. W2013-01966-CCA-R3-CD, 2014 WL 2547726, at *5 (Tenn. Crim. App. May 30, 2014) (citing State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008)). Moreover, Tennessee Code Annotated section 40-35-102(6) is only advisory. See T.C.A. § 40-35-102(6)(D). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State v. Kyto Sihapanya, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *3 (Tenn. Apr. 30, 2014).

Initially, we acknowledge that the trial court failed to articulate the specific facts of the case upon which it based its denial of probation and instead offered only conclusory remarks about the seriousness of the offense. In that regard, we note that despite the wide discretion afforded to trial courts in sentencing decisions, the trial court has an affirmative duty to state on the record, either orally or in writing, its findings of fact and reasons for

imposing a specific sentence on the record to facilitate appellate review. See T.C.A. § 40-35-209(c), -210(e); see also, State v. Robert Joseph Harr, No. W2011-02735-CCA-R3-CD, 2013 WL 5422801, at *10 (Tenn. Crim. App. Sept. 27, 2013), perm. app. denied (Tenn. Feb. 12, 2014) (Tipton, P.J., concurring and dissenting) ("I do not believe that our supreme court intended in Bise and Caudle to do away, in wholesale fashion, with Tennessee jurisprudence developed over the last thirty years upon which the Sentencing Act is based and in which the Act's provisions are interpreted."). Notwithstanding, upon our review of the record, including the entire sentencing hearing, we conclude that the trial court's denial of probation is supported by the record.

As noted above, the trial court considered all of the evidence presented at trial and the sentencing hearing, including the presentence report, the psychosexual evaluation, and the statements by the Defendant and the victim. Despite the Defendant's relatively minimal criminal history and positive psychosexual evaluation, the trial court reasoned that "confinement in this case is necessary to avoid depreciating the seriousness of the offense." See T.C.A. § 40-35-103(1)(B). Tennessee courts have held that if the seriousness of the offense forms the basis for the denial of alternative sentencing, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement."[3] State v. Bottoms, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991); see also, State v. Trotter, 201 S.W.3d 651, 654 (Tenn. 2006). Although the court failed to articulate the specific facts upon which it based this conclusion, the court's extensive discussion of the facts and circumstances of this case during the sentencing hearing reveal that the court's decision was properly based upon the facts of the case and was not arbitrary.

Specifically, the trial court found that the Defendant abused a position of private trust and stated, "I believe [the Defendant] had every intention of having sex with [the victim]. And [the Defendant] planned it and . . . took full advantage of the situation." See T.C.A. §

_____

[3] This court has questioned the continued viability of the heightened standard of review where the trial court denies probation based solely on the need to avoid depreciating the seriousness of the offense in light of Bise and Caudle. See State v. Edward Shannon Polen, No. M2012-01811-CCA-R3-CD, 2014 WL 1354943, at *8 (Tenn. Crim. App. Apr. 4, 2014); State v. Delavan Benjamin Mohammed, No. M2011-02552-CCA-R3-CD, 2013 WL 1874789, at *6 (Tenn. Crim. App. May 3, 2013). However, in State v. Kyto Sihapanya, the Tennessee Supreme Court seemingly indicated that the heightened standard of review is still applicable "in cases in which the trial court denies probation based on only" the seriousness of the offense. No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *3 (Tenn. Apr. 30, 2014). In any event, the trial court in the present case repeatedly noted the "repulsive" and "shocking" nature of the offense, satisfying the heightened standard contemplated in Bottoms.

40-35-114(14); see also, State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (reasoning that the circumstances of the offense, "including the appellant's abuse of a position of private trust," justified denial of probation). The court also noted the emotional impact that this offense had on the victim and reiterated that the victim "will be scarred from it for life." The court, which had the benefit of hearing the testimony and evidence presented at both the trial and at the sentencing hearing, repeatedly noted that this offense was "repulsive" and "absolutely shocking to . . . any decent citizen in our community." Despite the jury's verdict convicting the Defendant of the lesser-included offense of sexual battery, it is clear from the record that the court found the Defendant's conduct to be outrageous and deserving of incarceration. See State v. Percy Brown, No. 01C01-9701-CR-00015, 1997 WL 688996, at *3 (Tenn. Crim. App. Nov. 5 1997) ("Although sexual battery is a probation eligible offense, this Court still may consider the true nature of the offense in determining whether probation is appropriate."); see also, State v. Christopher Warren Shutters, No. C.C.A. 1027, 1987 WL 19874 (Tenn. Crim. App. Nov. 16, 1987) (upholding the trial court's denial of probation for the defendant's sexual battery conviction and noting that the "proof clearly could have supported findings of aggravated rape"); State v. Kilgore, 588 S.W.2d 567, 568 (Tenn. Crim. App. 1979) (upholding the trial court's denial of probation for the defendant's voluntary manslaughter conviction and noting that the defendant could have been convicted of first or second degree murder "had the jury been less lenient").

Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Caudle, 388 S.W.3d at 280. He is not entitled to relief.

**CONCLUSION**

Based on the foregoing authority and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE